## McKEE *v.* LATROBE.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 35. Argued and submitted March 13, 14, 1895. - - Decided October 21, 1895.

On the facts set forth in the headnote to *Gilfillan* v. *McKee*, just decided, it is further held that Latrobe was entitled to receive from the general fund the value of his services, and that their value was $75,000.

This case also was argued in connection with *Gilfillan* v. *McKee*, *ante*, 303. The bill was originally filed by John H. B. Latrobe, July 13, 1888, six days after the bill of Lamon and

Black was filed, and for the same general purpose of sharing in the sum recovered by McKee, relying upon the trust contained in the contract of July 16, 1870, between the Choctaw Nation and McKee, in favor of persons who had rendered services theretofore in the prosecution of said claim.

His allegation of service is substantially that, after the close of the war of the rebellion, the Choctaw Nation employed him as their professional adviser in all matters, including the net proceeds claim, pertaining to their rights against the United States, for which the nation agreed to pay him a reasonable compensation. That he immediately entered upon the duties thus assumed, and prepared the treaty of 1866 between the nation and the United States, reinstating the Indians in their rights and privileges. For this service, however, he seems to have been paid. That he procured and submitted large masses of evidence to the various committees of Congress having the matters in charge, and made numerous arguments before said committees, and before the executive officers of the United States, and stated accounts in behalf of the nation against the United States, and was engaged five or six years in the active prosecution of their claim. That these services continued until about the time McKee interposed in the business as the leading agent of the nation. That after that date, his services were apparently not needed or desired by the other attorneys, and he did but little, but is informed and believes that McKee and those working with him prosecuting the case, which he had previously prepared, and, with the use of the results of his professional skill and industry, secured the payment of the claim. That, if the McKee contract were held to be valid, then McKee was bound in equity and justice to pay to complainant a fair and just compensation for the services theretofore rendered, for which McKee should be charged as trustee. That it was agreed in 1866, between himself and the Choctaws, that his services should be rendered in conjunction with Cochrane, and that he subsequently agreed with Cochrane that his compensation should be paid out of the percentage reserved to Cochrane by his contract, and that he is reasonably entitled to receive $75,000, which had been

agreed upon between himself and McPherson, Cochrane's executor, as his proper compensation.

In his answer, McKee denied the general employment of the complainant by the Choctaw Nation, and averred that, if he were ever employed at all, it was only to assist and advise with the authorities of said nation in regard to the negotiation of the treaty of April 28, 1866, and denied that under such treaty the claim for net proceeds was secured, or that it had been prosecuted to a successful conclusion through the provisions of such treaty.

Upon a hearing upon pleadings and proofs, the case resulted in a decree for $75,000 against McKee, with the further provision that if anything were paid to the complainant Latrobe out of the fund deposited in the court by McKee in the interpleader suit, such sum should be credited in favor of McKee on the decree. Upon the following day, a decree was entered in the interpleader suit, to which Latrobe was a party defendant, awarding him his distributive share of the entire amount, $75,000, out of the general fund of $147,057.63 in controversy in that case. McKee appealed from the decree in this case.

*Mr. John J. Weed* and *Mr. Jefferson Chandler* for appellant.

*Mr. Enoch Totten*, (with whom was *Mr. Reginald Fendall* on the brief,) for Mrs. Latrobe.

MR. JUSTICE BROWN, after stating the case as above, delivered the opinion of the court.

This is another one of the claims made under the trust expressed in the McKee contract, "to adjust the claims of all parties who have rendered service heretofore in the prosecution of said claim, upon the principle of equity and justice, according to the value of the services so rendered." McKee's argument in this connection is, that this was a personal agreement and obligation of himself and Blunt with the Choctaw Nation; was not for the benefit of Latrobe; vested in no one any interest in the money which might become payable under that contract; and was not an assignment or dedication of

any part of the money which they might receive from the Choctaw Nation, in consideration of the performance by them of their contract — in other words, that it was a contract of indemnity, by which McKee undertook to save the Choctaw Nation harmless from any claim that should be made for services that had been theretofore rendered by other agents and attorneys. We do not so read it. A trust so plainly declared would be of no avail, if the class of persons who are described therein could not take advantage of it. It was not needed to indemnify the Choctaws, since no possible action could lie against them after the contract had been abandoned by Black. It was evidently intended to satisfy any moral obligation for services which had been performed, but not completed, and to throw the burden of adjusting and paying them upon McKee.

His theory, too, is inconsistent with his repeated statements to leading members of the Choctaw council, whose affidavits, received in the place of depositions, show that he declared to the leading authorities of the nation that he considered himself obligated under his contract to pay all outstanding obligations to persons for the services rendered in the prosecution of the claim prior to his own contract. In addition to that, and in corroboration of his own statements, he exhibited a letter written by his own attorney, and by his direction, to Leflore, in which he stated that " so far as I know, or have ever heard, every lawyer who has ever rendered service, or pretends to have rendered service, in regard to the net proceeds claim expects to get his pay out of the thirty per cent, and to get it through McKee. For myself, I expect to be paid by Mr. McKee out of his thirty per cent. I have no claim against the Choctaw Nation if Mr. McKee's thirty per cent is paid, even if he should not pay me, but of this I have not the slightest doubt. McKee's contract requires him to stand between the Choctaws and their attorneys who have rendered service. He would be liable to suit in the courts, here and elsewhere, wherever he could be found, if he should neglect or fail to carry out his agreement with the Choctaws to settle and adjust the claims of other attorneys, who have rendered ser-

vice, upon principles of equity and justice. The Choctaws would not be liable to any such suit anywhere." Here follows a list of parties who had rendered service in the prosecution of the claim, among which is the name of John H. B. Latrobe, with the statement that "he looks to Mr. McPherson, executor of Mr. Cochrane, for his fee. Whatever sum Mr. Latrobe or Mr. Cochrane gets, comes out of McKee's thirty per cent." McKee's prompt repudiation of this promise, and his vigorous defence to all these claims, argues either a serious impairment of memory with reference to the transaction, or a deliberately dishonest purpose.

The services of Mr. Latrobe in this connection seem to have had their origin in a visit made by the Choctaw delegation on their way to Washington, at Latrobe's residence in Baltimore. It seems they expressed to him the fear that all their treaties with the government had been abrogated by the war that had just ended; that he expressed some doubt upon the point, said he would look into the matter, and a short time afterwards called upon the delegation and told them that he had made up his mind that their treaties had not been abrogated by the war; that the right had been given to the President to abrogate them by proclamation, and that he had not done so; that the occasion had passed, and that the treaties were still in force. The value of his services was subsequently agreed upon by McPherson, executor of Cochrane's estate, and fixed at $75,000. This was the value put upon them by the court below, and we see no occasion to disturb it.

The decree of the court below is, therefore,

*Affirmed.*